UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

In re:

DAVID CAMEO,

Chapter 7

Case No.:  1-21-41803-jmm

                                        Debtor.
-------------------------------------------------------------X

DIALECTIC DISTRIBUTION LLC,

                                        Plaintiff,

Adv. Pro. No.:  1-22-01054-jmm

                v.

DAVID CAMEO,

                                        Defendant.

-------------------------------------------------------------X


**MEMORANDUM DECISION GRANTING DIALECTIC DISTRIBUTION LLC'S
MOTION FOR SUMMARY JUDGMENT ON ITS SECOND CLAIM FOR RELIEF TO
DENY A DISCHARGE TO DAVID CAMEO**

Thomas J. Frank
The Frank Law Firm P.C.
71 New Street
Huntington, NY 11743
(516) 246-5577
Fax : 516-246-5597
Email: thomas@frankfirmpc.com
*Counsel for Plaintiff*

Brian J. Hufnagel
Morrison Tenenbaum PLLC
87 Walker Street, Floor 2
New York, NY 10013
(212) 620-0938
Fax : (646) 998-1972
Email: bjhufnagel@m-t-law.com
*Counsel for Defendant*

Roman Leonov
Lust & Leonov
99 Wall Street112
New York, NY 10005
212-518-1503
Email:
rleonov@valelawgroup.com
*Counsel for Defendant*

## INTRODUCTION

Dialectic Distribution LLC (the "Plaintiff") moves for summary judgment on its claim to deny David Cameo (the "Defendant") a discharge under section 727(a)(4) of title 11 of the United States Code (the "Bankruptcy Code").  The Plaintiff alleges the Defendant made false statements in his bankruptcy schedules, Statements of Financial Affairs (the "SOFA"), and at the meeting of creditors conducted under Bankruptcy Code section 341 (the "341 Meeting").

The Defendant claims the omissions or misstatements, if any, were inadvertent and made without bad intent.  For the reasons set forth below, the Court finds that the Defendant has failed to establish a genuine dispute as to a material fact and the Plaintiff has satisfied its burden of proof on its claim.  Therefore, the Plaintiff's motion for summary judgment is granted and the Defendant's discharge is denied.

## JURISDICTION

The Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334, 28 U.S.C. § 157(b)(2), and the Standing Order of Reference entered by the United States District Court for the Eastern District of New York, dated August 28, 1986, as amended by the Order, dated December 5, 2012.  The Court may hear and determine the claims asserted in this adversary proceeding because they are core proceedings under 28 U.S.C. § 157(b)(2)(I) and (J).  This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Rule 52 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding under Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## PROCEDURAL BACKGROUND

On July 11, 2022, the Plaintiff filed a complaint commencing this adversary proceeding. Compl., Adv. Pro. ECF 1.[1]  The Plaintiff's First Claim for Relief seeks a declaration that its claim is nondischargeable under Bankruptcy Code section 523(a)(2)(A).  The Plaintiff's Second, Third, and Fourth Claims for Relief seek denial of the Defendant's discharge under Bankruptcy Code sections 727(a)(4)(A), 727(a)(4)(B), and 727(a)(5), respectively.  On July 18, 2022, the Defendant answered and asserted two counterclaims.  *See* Answer to Compl., Adv. Pro. ECF 6. On September 7, 2022, the Plaintiff answered the counterclaims.  *See* Answer to Countercl., Adv. Pro. ECF 7.

On September 2, 2025, the Plaintiff moved for summary judgment on its Second Claim for Relief.  *See* Mot. Summ. J., Adv. Pro. ECF 117.  In support of its Bankruptcy Code section 727(a)(4)(A) claim, the Plaintiff alleged the Defendant made false statements, under oath, in connection with his bankruptcy case, including that the Defendant:  falsely claimed in his Schedule J that he paid $9,000 monthly for rent; falsely testified in the 341 Meeting that the downpayment for his home came exclusively from his wife's savings; failed to disclose in his Schedule A/B that he owned Jersey Cameras 2 Inc. ("Jersey Cameras"); and failed to disclose in the SOFA that he previously owned a fifty-percent interest in Digital Direct and More Inc. ("DDAM").  *See* Mem. Law Supp. Mot. Summ. J. at 11-12, Adv. Pro. ECF 117.  On September 25, 2025, the Defendant filed opposition.  *See* Aff. Opp'n Mot. Summ. J., Adv. Pro. ECF 124; Resp. to Pl.'s Statement of Material Facts, Adv. Pro. ECF 125; Mem. Law Opp'n Mot. Summ. J.,

---

[1]  Citations to "Adv. Pro. ECF []" are to documents filed in the above-captioned adversary proceeding *Dialectic Distribution LLC v. Cameo*, Adv. Pro. No. 22-01054-jmm.  Citations to "Bankr. ECF []" are to documents filed in *In re David Cameo*, Chapter 7 Case No. 21-41803 -jmm.  Citations to "Amazon Adv. Pro. ECF []" are to documents filed in *Amazon.com Services LLC v. David Cameo*, Adv. Pro. 21-01180-jmm.  Citations to "Trustee Adv. Pro. ECF []" are to documents filed in *Doyaga v. Ari Cameo and Shoshana Ostron*, Adv. Pro. 22-01053-jmm.

Adv. Pro. ECF 126.  The Plaintiff replied on October 17, 2025.  *See* Mem. Law Further Supp. Mot. Summ. J., Adv. Pro. ECF 129.

On September 2, 2025, the Defendant moved for summary judgment seeking dismissal of all four Claims for Relief.  *See* Mem. Law Supp. Mot. Summ. J., Adv. Pro. ECF 116.  The Plaintiff filed opposition on September 24, 2025.  *See* Mem. Law. Opp'n Mot. Summ. J., Adv. Pro. ECF 121.  The Defendant responded on October 15, 2025.  *See* Reply Mem. Law. Supp. Mot. Summ. J., Adv. Pro. ECF 128.

The Court heard argument on the Plaintiff's motion for summary judgment on November 4, 2025.

## **BACKGROUND**

### The Defendant's Bankruptcy Case

The Defendant filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on July 13, 2021 (the "Petition Date").  Bankr. ECF 1.  David J. Doyaga (the "Trustee") was appointed as the chapter 7 trustee for the Defendant's bankruptcy estate.  *See* Docket Entry of July 13, 2021, Bankr. ECF.

The Defendant filed his schedules and SOFA on August 5, 2021.  Schedules and SOFA, Bankr. ECF 10.  The Defendant's schedules and SOFA are signed by the Defendant under penalty of perjury.  Decl. Indiv. Debtor's Schedules, SOFA, Bankr. ECF 10.

The Defendant represented in his Schedule A/B that he owned interests in:  David Cameo Sales and Marketing; Cameo Distribution Inc., Digital Direct Inc., Digital Direct 2, and Digital Direct 3.  Schedule A/B: Property, Bankr. ECF 10.  The Defendant represented in his SOFA that, within two years prior to the Petition Date, he had not sold, traded, or transferred property to

anyone, other than property transferred in the ordinary course of business.  SOFA, Bankr. ECF 10.

The Defendant disclosed in his SOFA that, as of the Petition Date, he was a party to two legal proceedings:  *Dialectic Distribution, LLC v. Cameo*, Index No. 20-cv-07903 pending in the District of New Jersey (the "Plaintiff's Prepetition Action"); and *Amazon v. Cameo*, an arbitration (the "Amazon Arbitration").  *Id.*  The Defendant described both proceedings as pending.  *Id.*

In Schedule J, the Defendant represented that he paid $9,000 monthly for residential rental or home ownership expenses.  Schedule J: Your Expenses, Bankr. ECF 10.

The Trustee examined the Defendant, under oath, at the 341 Meeting on September 10, 2021.  341 Meeting Tr. (the "341 Meeting Tr."), Decl. of Thomas J. Frank in Supp. Of Mot. Summ. J. (the "Frank Decl."), Ex. 4, Adv. Pro. ECF 117-6.

On December 8, 2021, the Defendant filed an amended Schedule A/B, which disclosed that he owned Jersey Cameras.  Am. Schedule A/B: Property, Bankr. ECF 62.  The Defendant signed the amended Schedule A/B under penalty of perjury.  *Id.*

On October 12, 2021, Amazon.com Services LLC ("Amazon") commenced an adversary proceeding seeking a declaration that Amazon's claims against the Defendant are nondischargeable.  Amazon Adv. Pro. ECF 1.  Amazon alleged the Defendant was Jersey Cameras's sole owner and alter ego.  Compl. ¶ 6, Amazon Adv. Pro. ECF 1.  Amazon also alleged that in 2018, the Defendant and Jersey Cameras listed high value electronics, like drones, cameras, and laptops for sale on Amazon.com but delivered low value products like USB bracelets.  *Id.* at ¶ 18.  Further, Amazon alleged the Defendant and Jersey Cameras failed to honor customer refund requests.  *Id.* at ¶ 19.  Amazon claimed it suffered damages exceeding $2

million because the Defendant's fraud triggered Amazon's obligations to provide refunds to Jersey Cameras' customers under Amazon's "A to Z Guarantee." *Id.* at ¶ 20. This Court granted Amazon's motion for summary judgment declaring that Amazon's claims against the Defendant were nondischargeable because the claims resulted from actual fraud. *See* Mem. Decision, Amazon Adv. Pro. ECF 83.

On July 11, 2022, the Trustee commenced an adversary proceeding to recover alleged fraudulent conveyances from the Defendant's wife, Shoshana Ostron ("Ostron"), and the Defendant's brother, Ari Cameo ("Ari"). Trustee Adv. Pro. ECF 1. The Trustee alleged that in 2018, the Defendant transferred his 50% interest in DDAM to Ari, for no consideration. *Id.* at ¶ 37. The Trustee alleged the Defendant, Ari, and Ostron transferred the salary or distributions that would have been due to the Defendant from DDAM to Ostron and disguised those transfers as Ostron's salary. *Id.* The Court approved a settlement resolving the Trustee's claims that required Ari and Ostron to pay the Trustee $460,000. *See* Settlement Agreement and Release, Trustee Adv. Pro. ECF 23-1; Order, Trustee Adv. Pro. ECF 25.

<u>Jersey Cameras</u>

The Trustee's examination of the Defendant at the 341 Meeting included questions about the Defendant's five businesses listed on Schedule A/B. 341 Meeting Tr. 13:24-16:10, Adv. Pro. ECF 117-6. The Defendant testified that none of the five businesses function anymore but he "had to list them because . . . they're still open. I just never dissolved them." *Id.* at 14:3-5. After the Trustee completed his questions, the Defendant was questioned by Amazon's counsel, who asked the Defendant whether he had an ownership interest in Jersey Cameras. *Id.* at 22:1-3. The Defendant testified he was the sole owner of Jersey Cameras, but it had not been operating for three or four years. *Id.* at 22:4-16; 23:10-20.

DDAM

At the 341 Meeting, the Defendant testified that Ostron is the customer service manager for DDAM, she has worked there for almost five years, and earns $400,000 annually. *Id.* at 16:16-20, 23-25; 17:10. The Defendant stated that Ari owns DDAM. *Id.* at 16:21-22. The Defendant also testified that neither he, nor his wife, has an ownership interest in DDAM. *Id.* at 17:2-7.

Additionally, the Defendant testified that the Plaintiff's Prepetition Action was an action to collect on his personal guarantee of a business debt. *Id.* at 17:19; 18:9. The Trustee asked for the business related to the Defendant's personal guarantee. The Defendant responded that he guaranteed the Digital Direct lease[2] and testified that he was "buying from [Ari] . . . and I signed on personal guarantee if anything would happen, it will be my fault then." *Id.*

As the Defendant had not disclosed his interest in Jersey Cameras in his Schedule A/B, the Trustee warned the Defendant during the 341 Meeting "to think carefully if there are any other companies that you had an interest in, in the last six years. We – now we've gotten Jersey Cameras. Is there anything else?" *Id.* at 22:21-24. The Defendant responded that he did not recall any other companies. *Id.* at 22:25.

In the Plaintiff's April 7, 2022 deposition of the Defendant, the Defendant testified that Ari started DDAM in 2014 and the Defendant worked for DDAM from 2016 to 2020. Def. Dep. 57:25-58:17, Adv. Pro. ECF 117-10. The Defendant testified that Ari gave the Defendant a fifty percent (50%) interest in DDAM in 2016. *Id.* at 63:9-12. The Defendant testified he transferred his interests in DDAM to Ari in February or March of 2018 for no consideration and Ostron continued to work for DDAM. *Id.* at 101:20; 102:14; 103:19-22. Notwithstanding that he no

---

[2] The Defendant did not specify whether DDAM or another Digital Direct entity was the tenant under the lease.

longer owned an interest in DDAM, the Defendant continued to sign documents as an officer of

DDAM until March of 2019.  *See* Guarantee, Frank Decl. Ex. 14, Adv. Pro. ECF 117-16.

<u>Downpayment for the Defendant's Home</u>

At the 341 Meeting, the Defendant testified that Ostron owned his home and she

purchased it in or around 2018 for approximately $2.075 million.  341 Meeting Tr. 8:1-18; 9:7-

22, Adv. Pro. ECF 117-6.  The Defendant testified as follows concerning the source of Ostron's

funds to purchase the home:

Q       Where did [Ostron] get the monies to purchase that property?

A       She's worked all her life so she had savings.

Q       Did you contribute to the purchase price?

A       No, I did not.

341 Meeting Tr. 9:24-10:6, Adv. Pro. ECF 117-6.

The downpayment for the home was $404,000 or $420,000.  Ostron Dep. 37:2-4, Frank

Decl. Ex. 6, Adv. Pro. ECF 117-8; Decl. of David Cameo in Opp'n of Mot. Summ. J.  ¶ 15-16,

(the "Def. Decl."), Adv. Pro. ECF 124-2.  Ostron borrowed $260,000 from Cameo Distribution

Inc. for the downpayment.  Ostron Dep. 158:17-159:14, Adv. Pro. ECF 117-8.  Cameo

Distribution Inc. is 85% owned by the Defendant.  Schedule A/B, Bankr. ECF 10.

<u>$9,000 Monthly Rental Expense</u>

In the 341 Meeting, the Trustee asked about the Defendant's representation in his

Schedule J that he paid $9,000 monthly for rental or home ownership expenses:

Q       In your bankruptcy schedules, I thought I saw that you pay rent. Do you pay
        rent to your wife?

A       No, I don't pay rent.

Q       All right. Were you aware that it appears from your schedules that you pay rent?

A    No, I wasn't aware of that. It was by mistake.

341 Meeting Tr. 8:19-25, Adv. Pro. ECF 117-6.

## DISCUSSION

### I.    Standards for Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

"In ruling upon a summary judgment motion, the court's job is not to resolve disputed issues of fact, but to determine whether a genuine issue of fact exists." *Bethpage Fed. Credit Union v. Freidman (In re Kabbalah Taxi Inc.)*, No. 17-45743-cec, Adv. Pro. No. 18-1016-cec, 2018 WL 3569314, at *2 (Bankr. E.D.N.Y. July 20, 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). "When viewing the evidence, the court must 'assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in [the non-movant's] favor.'" *Weinstock v. Columbia Univ*., 224 F.3d 33, 41 (2d Cir. 2000) (quoting *Delaware & Hudson Ry. Co. v. Consol. Rail Corp*., 902 F.2d 174, 177 (2d Cir. 1990)).

A movant has the initial burden of establishing the absence of any genuine issue of material fact, which burden may be discharged by pointing out the absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 323–25. Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions,

answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324.  "The nonmoving party must show that there is more than a metaphysical doubt regarding a material fact and may not rely solely on self-serving conclusory statements." *Rosenman & Colin LLP v. Jarrell (In re Jarrell)*, 251 B.R. 448, 450–51 (Bankr. S.D.N.Y. 2000) (internal citations omitted).  No genuine issue exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249–50.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*.  (internal citations omitted).

## II.    Standards for Plaintiffs' Section 727(a)(4)(A) Claim

Bankruptcy Code section 727(a)(4)(A) provides that a debtor shall be denied discharge when "the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account[.]" 11 U.S.C. § 727(a)(4)(A).  Denying discharge pursuant to Bankruptcy Code section 727 is "a severe sanction and must be construed strictly in favor of the debtor."  *Moreo v. Rossi (In re Moreo)*, 437 B.R. 40, 59 (E.D.N.Y. 2010).  A court must exercise "even greater caution when considering denial of discharge sought by motion for summary judgment." *Cap. One Equip. Fin. Corp. v. Singh (In re Singh)*, 585 B.R. 330, 335 (Bankr. E.D.N.Y. 2018). However, it is appropriate to determine objections to discharge on summary judgment where "the operative facts are admitted and the malevolent conduct of the debtor has been acknowledged." *In re Esposito*, 44 B.R. 817, 821 (Bankr. S.D.N.Y. 1984).

To prevail on a claim under Bankruptcy Code section 727(a)(4)(A), a plaintiff must prove by a preponderance of evidence that "(1) the debtor made a statement under oath; (2) the statement was false; (3) the statement related materially to the bankruptcy case; (4) the debtor

knew the statement was false; and (5) the debtor made the statement with fraudulent intent." *Agai v. Antoniou (In re Antoniou)*, 515 B.R. 9, 22 (Bankr. E.D.N.Y. 2014) (citation omitted).

Regarding the second element, a statement is false if "(1) it omits even one asset or source of income; (2) necessary[ ] material information is repeatedly left undisclosed during a case's pendency; or (3) an affirmative misstatement[ ] is made and is not corrected during an examination or at any point during his case's proceeding." *In re Singh*, 585 B.R. 330 at 336; *see also Adler v. Ng (In re Adler)*, 395 B.R. 827, 841 (E.D.N.Y. 2008) ("Omissions as well as affirmative misstatements qualify as false statements for Section 727(a)(4)(A) purposes."); *TD Bank, N.A. v. Nazzaro (In re Nazzaro)*, No. 10-74869-reg, Adv. Pro. No. 10-8500-reg, 2013 WL 145627, at *7 (Bankr. E.D.N.Y. Jan. 14, 2013) ("One single false oath or account is sufficient to deny a debtor's discharge.").

Regarding the third element, "[a] false oath is material 'if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property.'. . . [E]ven worthless assets and unprofitable business transactions must be disclosed." *Ethelberth v. Omogun (In re Omogun)*, No. 8-16-75566-las, Adv. Pro. No. 8-17-08023-las, 2022 WL 2517160, at *10 (Bankr. E.D.N.Y. July 6, 2022) (citation omitted); *see Mazer-Marino v. Levi (In re Levi)*, 581 B.R. 733, 754 (Bankr. S.D.N.Y. 2017) (a statement is material if it includes information "that creditors and the trustee reasonably would have regarded as significant in identifying the assets of the estate that could be liquidated and used to satisfy claims[.]").  "[M]ateriality does not require a showing that creditors were prejudiced by the false statement."  *In re Omogun*, 2022 WL 2517160, at *10; *see also In re Murray*, 249 B.R. 223, 229 (E.D.N.Y. 2000) (materiality standard does not require

"the court [to] balance the debtor's intentional or reckless errors or omissions in his schedules against the actual harm to the estate").

Bankruptcy Code section 727(a)(4)(A)'s "knowledge" requirement is satisfied by a showing that the debtor knew what was true but knowingly, willfully and intentionally swore to something false.  *See In re Moreo*, 437 B.R. at 62 (citation omitted).

Fraudulent intent can be established by a showing of actual fraud through evidence of the traditional badges of fraud, or by the debtor's reckless disregard for the truth of his statements. *See In re Singh*, 585 B.R. at 338–39.  Reckless disregard for the truth is determined by considering:  (a) the serious nature of the information sought and the necessary attention to detail and accuracy in answering; (b) a debtor's lack of financial sophistication as evidenced by his or her professional background; and (c) whether a debtor repeatedly blamed recurrent errors of carelessness or failed to take advantage of an opportunity to clarify or correct inconsistencies. *See id.* at 339 (internal quotations omitted); *see also Abraham v. Stuart*, No. 15-CV-04864, 2016 WL 4045432, at *9 (E.D.N.Y. July 28, 2016), *aff'd sub nom.*, *In re Abraham*, 693 Fed. Appx. 59 (2d Cir. 2017) (finding that the debtor's omission of business interests in his petition and amended petition exhibited reckless indifference to the truth as the debtor was sophisticated, possessed a finance degree, and owned several businesses).

A failure to amend schedules can give rise to an inference of fraud.  *In re Singh*, 585 B.R. at 339–40.  While an amendment does not expunge the falsity of an oath, "it is well established that the court may consider the debtor's subsequent voluntary disclosure as evidence of innocent intent." *See In re Kelly*, 135 B.R. 459, 461–62 (Bankr. S.D.N.Y. 1992).  However, this inference of innocent intent becomes slight "where the debtor amends schedules or changes testimony after

the trustee or creditors have uncovered what the debtor has sought to hide." *See In re Arcuri*, 116 B.R. 873, 882 (Bankr. S.D.N.Y. 1990).

Once the movant satisfies its initial burden of proving that a false statement was made, the burden of production shifts to the debtor to proffer a "credible explanation." *Pergament v. Smorto (In re Smorto)*, No. 07-CV-2727, 2008 WL 699502, at *4 (E.D.N.Y. Mar. 12, 2008); *see also Fido's Fences, Inc. v. Bordonaro (In re Bordonaro)*, 543 B.R. 692, 702 (Bankr. E.D.N.Y. 2016), *aff'd sub nom.*, *Bordonaro v. Fido's Fences, Inc.*, 565 B.R. 222 (E.D.N.Y. 2017) (finding that a Defendant did not provide a credible explanation for scheduling plaintiff as an unsecured creditor because Defendant was aware of Plaintiff's lien). If the defendant does not produce an adequate explanation, "a court may infer fraudulent intent." *United States v. Manno-DeGraw (In re Manno-DeGraw)*, No. 8-15-73332-reg, Adv. Pro. No. 8-16-08006-reg, 2016 WL 3708062, at *2 (Bankr. E.D.N.Y. July 6, 2016) (citing *In re Virovlyanskiy*, 485 B.R. 268, 272 (Bankr. E.D.N.Y. 2013)). "[T]he overall burden of proof," however, "remains with the moving party." *In re Moreo*, 437 B.R. at 59.

### III.  Application of Standards

#### a.  The Defendant Made False Statements Under Oath.

The Plaintiff alleges the Defendant made false statements, under oath, consisting of the Defendant's: omission of Jersey Cameras from Schedule A/B; omission of DDAM from the SOFA; misstatements at the 341 Meeting regarding the source of the downpayment for his home; and representation in his Schedule J that he pays $9,000 in rent.

The Defendant does not dispute that he owns Jersey Cameras, or that he owned DDAM until 2018, nor does the Defendant dispute that those interests were not included in his original Schedule A/B or SOFA, each of which was signed under oath. Therefore, the Plaintiff has

satisfied its burden that the Defendant made false statements under oath in his Schedule A/B and SOFA.

The Defendant testified in the 341 Meeting that the downpayment for the home came from Ostron's savings and he did not contribute to the purchase price. The Defendant testified at the 341 Meeting that Ostron was able to make the downpayment because she worked her whole life and had savings. However, $260,000 of the downpayment came from Cameo Distribution Inc., which is 85% owned by the Defendant. The Defendant contends his 341 Meeting testimony was not false because the $260,000.00 was deposited into Ostron's bank account and the downpayment came from Ostron's savings and not directly from the Cameo Distribution Inc. loan. *See* Def. Decl. ¶ 15-16, Adv. Pro. ECF 124-2.

The Defendant failed to disclose the funds in Ostron's savings account were not solely from Ostron's earnings and savings but included $260,000 of loan proceeds from Cameo Distribution Inc. Additionally, he failed to disclose he indirectly funded the downpayment through his company Cameo Distribution Inc. To the contrary, the Defendant affirmatively testified at the 341 Meeting that he did not fund the downpayment. Therefore, the Plaintiff has satisfied its burden of proving that the Defendant made a false statement under oath in the 341 Meeting.

Regarding the Defendant's statement in his Schedule J, the Trustee inferred from the Defendant's Schedule J that the Defendant paid $9,000 in rent. However, Schedule J does not ask about a debtor's rent payments. Rather, Schedule J asks for "the rental or home ownership expenses for your residence." Schedule J informs the debtor to "[include] first mortgage payments and any rent for the ground or lot." *See* Official Bankruptcy Form B106J, Schedule J: Your Expenses (2015), U.S. Courts, https://www.uscourts.gov/forms-rules/forms/schedule-j-

your-expenses-individuals. The query in Schedule J is general and could include a payment by the Defendant to Ostron to pay the mortgage for their residence. Therefore, the Plaintiff has failed to prove that the Defendant's Schedule J included a false statement.

### b.   The Defendant Knew the Statements Were False.

The Defendant does not claim that he did not know he owned Jersey Cameras or previously owned DDAM. The Defendant does not claim he was unaware that Cameo Distribution Inc. loaned $260,000 to Ostron to fund the downpayment for their home. Therefore, the Plaintiff satisfied its burden that the Defendant knowingly made false statements.

### c.   The Defendant Made the False Statements with Fraudulent Intent.

The Defendant has the burden of coming forward with a credible explanation for his false statements because the Plaintiff satisfied its initial burden of proving that the Defendant made false statements. As set forth below, the Defendant has failed to provide credible explanations. Accordingly, the Court may infer that the Defendant's false statements were made with fraudulent intent.

The Defendant's explanation for omitting DDAM from his SOFA is that he "listed Digital Direct Inc., Digital Direct 2, and Digital Direct 3, Digital Direct and More Inc., just slipped through my memory." Def. Decl. ¶ 7, Adv. Pro. ECF 124-2. However, as of the Petition Date:

- The Defendant was actively litigating with the Plaintiff concerning DDAM and that litigation was, in part, responsible for the Defendant filing this bankruptcy case. *Id.* at ¶ 6. ("Dialectic sued CD, DDAM, and myself […] This claim, coupled with a few others, resulted in me filing for bankruptcy protection[.]").

- The Defendant knew of the Plaintiff's Prepetition Action when preparing his schedules because that action is disclosed in his SOFA. *See* SOFA, Bankr. ECF 10.

- Ostron was working for and receiving $400,000 annually from DDAM at the time the Defendant filed his bankruptcy case. *See* Ostron Dep. 23:23-24:5, Adv. Pro. ECF 117-8.

- The Defendant continued to sign documents as an officer of DDAM as recently as March of 2019. *See* Guarantee, Frank Decl., Ex. 14 Adv. Pro. ECF 117-16.

- The Defendant did not disclose his prior interest in DDAM in the 341 Meeting, notwithstanding that the Trustee asked the Defendant about the Plaintiff's Prepetition Action and Ostron's salary from DDAM.

- The Defendant did not disclose his prior interest in DDAM at the 341 Meeting even after the Trustee reprimanded the Defendant for his failure to disclose his interest in Jersey Cameras and urged the Defendant to disclose his interests in any other entities.

- The Defendant did not amend his SOFA to disclose his prior interest in DDAM, even though he amended his Schedule A/B to disclose his interest in Jersey Cameras.

Based on the foregoing, the Defendant's explanation for failing to disclose his prior interest in DDAM is not credible.

The Defendant maintains his failure to disclose his interest in Jersey Cameras was not intentional. He claims his lack of fraudulent intent is evidenced by his disclosure of his interest in Jersey Cameras at the 341 Meeting. However, the Defendant did not disclose his interest in

Jersey Cameras when the Trustee asked the Defendant about his businesses.  Rather, the Defendant disclosed he owned Jersey Cameras only after Amazon's counsel asked the Defendant, point blank, whether the Defendant had an interest in Jersey Cameras.  Further, the Defendant did not disclose his interest in Jersey Cameras in his original Schedule A/B, notwithstanding that (a) he disclosed his interests in other companies that no longer functioned and, (b) Jersey Cameras was the subject of the Amazon Arbitration – an active and significant litigation.  Although the Defendant filed an amended Schedule A/B that disclosed his interest in Jersey Cameras, the amended schedule was not filed until three months after the 341 Meeting. Therefore, the Court finds that the Defendant's explanation for failing to disclose his interest in Jersey Cameras in Schedule A/B is not credible, and the Defendant's disclosure of his interests in Jersey Cameras at the 341 Meeting and in his amended Schedule A/B is not evidence of the Defendant's innocent intent.

As discussed above, the Defendant's explanation for his false statement that Ostron funded the downpayment for their home from her savings account is that his statement is technically correct because the downpayment was paid from Ostron's savings account.  The Defendant's explanation is not credible because it fails to address why the Defendant did not disclose that $260,000 on deposit in Ostron's savings account was borrowed from the Defendant's company, Cameo Distribution Inc.

The Court may reasonably infer the Defendant's fraudulent intent because the Defendant has failed to provide a credible explanation for his false statements.  Additionally, the Defendant's omissions concerning the downpayment for his home, his ownership interest in Jersey Cameras, and his former ownership interest in DDAM evidence the Defendant's reckless disregard for the truth.  The omissions are serious and important to the administration of this

Chapter 7 case.  The omission respecting the downpayment impacts the Chapter 7 estate's interest in a home that was purchased for over $2 million less than four years prior to the Petition Date.  The omission respecting DDAM impacts the estate's interest in an entity that had the financial wherewithal to pay Ostron $400,000 annually.  The omission of Jersey Cameras impacts the Trustee's administration of the estate's interests in that company.  The Defendant does not argue he is not sophisticated.  It is undisputed that the Defendant has operated or had an interest in several businesses.  Further, the Defendant did not take the opportunity in the 341 Meeting to explain the source of the downpayment, or that he previously owned an interest in DDAM.  Moreover, he disclosed his interest in Jersey Cameras only after Amazon's counsel asked about that entity.

Based on the foregoing, the Court finds that the Plaintiff has carried its burden of proving the Defendant's false statements were made with fraudulent intent.

### d.  The False Statements Are Material.

The Defendant argues that the omission of his former interest in DDAM is not material because "the administration of estate would not have been handled any differently had I included DDAM on the original schedules, because the fact of my ownership was made evident at the very beginning of the proceedings."  *See* Def. Decl. ¶ 21, Adv. Pro. ECF 124-2.  The legal standard for materiality is not whether the outcome of the case would have been different, but whether the false statement concerns the discovery of assets, business dealings, or the existence and disposition of his property.  The Defendant's omission of DDAM in the SOFA is material because it relates to the Defendant's business transactions.  That the Trustee was diligent and recovered $460,000 related to DDAM is evidence of the materiality of those omissions.

The Defendant does not argue in any meaningful way that his omission of Jersey Cameras or false statements respecting the downpayment are immaterial.  Both false statements are material because they relate to the Defendant's business dealings, Amazon's claims against the bankruptcy estate, or the estate's fraudulent conveyance claims against Ostron.

## <u>CONCLUSION</u>

For the reasons set forth above, there are no disputes respecting material facts precluding the Court from granting the Plaintiff's motion for summary judgment.  Therefore, the Plaintiff's motion for summary judgment on its Second Claim for Relief to deny the Defendant a discharge under Bankruptcy Code section 727(a)(4)(A) is granted and the Defendant's motion for summary judgment to dismiss that claim for relief is denied.  The Plaintiff is directed to submit a judgment denying the Defendant's discharge within fourteen days of entry of this Memorandum and Order.

As the Defendant's discharge is being denied under Bankruptcy Code section 727(a)(4)(A), the Defendant's motion for summary judgment to dismiss the Plaintiff's First, Third and Fourth Claims for Relief is denied as moot.  The Defendant is directed to submit a judgment denying the Defendant's motion for summary judgment within fourteen days of entry of this Memorandum and Order.

Dated: December 29, 2025
      Brooklyn, New York

Jil Mazer-Marino
United States Bankruptcy Judge